UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RICHARD LARSON,<br><br>                Petitioner,<br><br>v.<br><br>RANDY BLADES,<br><br>                Respondent. | Case No. 1:17-cv-00050-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court is a Second Amended Petition for Writ of Habeas Corpus filed by Idaho state prisoner Richard Larson ("Petitioner" or "Larson"), challenging Petitioner's Bonner County convictions on two counts of aggravated assault. *Dkt. 15*.

On June 5, 2019, the Court granted Respondent's Motion for Partial Summary Dismissal and dismissed all but one of Petitioner's claims as procedurally defaulted. *Dkt. 29*. The only remaining claim, Claim 7, is now ripe for adjudication.[1]

The Court takes judicial notice of the records from Petitioner's state court proceedings, which have been lodged by Respondent. *Dkt. 23*; *see also* Fed. R. Evid.

---

[1] Petitioner did not comply with the Court's order to file a reply in support of the merits of Claim 7. *See Dkt. 33*. Instead, Petitioner's briefing addresses only the procedurally defaulted claims that have already been dismissed. *See Dkt. 36*. Therefore, Claim 7 is subject to dismissal, without further discussion, pursuant to Rule 41(b) of the Federal Rules of Civil Procedure. *See* Rule 12 of the Rules Governing § 2254 Cases ("Habeas Rules") ("The Federal Rules of Civil Procedure, to the extent that they are not inconsistent with any statutory provisions or these rules, may be applied to a proceeding under these rules."). However, the Court will also go on to address Claim 7 on the merits.

MEMORANDUM DECISION AND ORDER - 1

201(b); *Dawson v. Mahoney*, 451 F.3d 550, 551 n.1 (9th Cir. 2006). Having carefully reviewed the record in this matter, including the state court record, the Court concludes that oral argument is unnecessary. *See* D. Idaho L. Civ. R. 7.1(d).

Accordingly, the Court enters the following Order denying habeas corpus relief on Claim 7.

## MOTION FOR EVIDENTIARY HEARING

Petitioner moves for an evidentiary hearing "to develope [sic] Claims No. 1, 2, 3, 4, 5, 8, 9, 10, and 11." *Dkt. 35* at 2. Because the Court has already dismissed these claims, the Court will deny Petitioner's motion.

## BACKGROUND

Absent clear and convincing evidence to the contrary, *see* 28 U.S.C. § 2254(e)(1), the following facts of Petitioner's case, as described by the Idaho Court of Appeals, are presumed correct:

> Lora Adams moved to Idaho and briefly dated Larson, her neighbor. After the relationship soured and Adams attempted to avoid contact, Larson was upset and made repeated efforts to convince Adams to continue dating him. Adams later began dating another man, John Bilsky. It is undisputed that Larson and Adams had an altercation, that Bilsky arrived shortly thereafter, and that Bilsky and Larson both discharged their firearms. The parties sharply dispute the details of the occurrence, but Larson was charged with two counts of aggravated assault, Idaho Code §§ 18–901, 18–905.
>
> At Larson's trial, Adams and Bilsky testified as follows. They said that Larson was chronically abusive toward Adams, having repeatedly verbally and physically threatened her, and that Larson's violent behavior escalated on the day in question. In order for Adams to reach her home, she had to travel over a private road, a portion of which passed through Larson's

property. Larson had placed two cables across the road at points on his property, using them as makeshift gates. Because of Larson's threatening behavior, Adams began notifying Bilsky when she was heading home and would be passing over Larson's land.

On the afternoon in question, Adams called Bilsky to tell him she was nearly home. When Adams came upon the first cable gate, she saw Larson in the vicinity and she relayed that information to Bilsky. Adams got out of her SUV to move the cable so that she could pass. Larson approached her angrily and drunkenly, shouted obscenities, and physically prevented her from getting back into her SUV. Adams tried to get away, but Larson slammed her hand in the vehicle door.

Adams responded by kicking Larson. Larson then punched Adams and threw her to the ground, straddled her, and placed his gun on her face, saying, "I'm going to kill you and I want you to be more afraid than you've ever been in your life." Keeping one hand on his gun, Larson choked Adams with his other hand until Bilsky arrived.

When Adams did not arrive at home quickly, Bilsky became worried. He grabbed his revolver and walked from Adams' home toward the first gate. As he approached and walked around to the passenger side of Adams' vehicle, he saw Larson. Larson pointed his gun at Bilsky and took a position at the rear of Adams' SUV. From that position, Larson told Bilsky to leave and threatened to kill him. Bilsky took a position at the front driver's side of the SUV and moved back and away from the vehicle, keeping the vehicle between himself and Larson. Thereafter, Larson, standing at the rear driver's side of the vehicle, fired several shots at Bilsky, but did not hit him. Bilsky returned fire. After Bilsky's second shot, Larson lowered his weapon. Bilsky and Adams fled in the SUV, afraid that Larson would reload and continue firing. In support of Adams' testimony, the State submitted pictures of her injuries. Those photographs depict redness circling the front of Adams' neck, over her trachea; red marks on both sides of Adams' face with two parallel scratches on the left side of her face; redness on Adams' torso; and a cut on Adams' hand.

Larson's testimony sharply contradicted the testimony of Adams and Bilsky. Larson said that he went to speak to Adams because she had repeatedly removed the surveyor's tape placed on the cable gates to increase visibility and refused to close the cable gates after passing through them, leaving the cables in the snow bank. When Adams arrived at the gate, he respectfully asked her to close the gate after passing through. Adams responded by apologizing for her interference with the gate. As Adams went back to her SUV, Larson tripped and fell into the vehicle's door, trapping Adams' hand between the door and the body of the vehicle and injuring her. Larson immediately apologized, but Adams attacked Larson, trying to knee him in the groin. Larson defended himself by pushing her into the snow. While Larson and Adams fought, Bilsky arrived at the area. Larson did not see him arrive, but heard him ask Adams if she was alright. Before Larson could turn around and face Bilsky, Bilsky shot Larson. Larson drew and repeatedly discharged his firearm until he was out of bullets. He testified that he "emptied [his] weapon just instinctually" because he had been shot and that he did not point his weapon at either Bilsky or Adams. After Bilsky and Adams fled, neighbors who had heard the shots called 911 for help and provided first aid. Larson was taken to the hospital for treatment of his gunshot wound.

Investigating police officers collected both Larson's Ruger .44 Magnum Red Hawk and Bilsky's Taurus .357. When seized, Bilsky's weapon contained two spent shell casings and five unspent bullets. Larson's weapon had been emptied by a neighbor who removed the empty shell casings at the scene while providing first aid to Larson. Officers found six spent .44 Magnum shell casings consistent with Larson's six-chamber firearm.

Larson was charged with two counts of aggravated assault, one count alleging that he threatened Adams with a firearm and one count alleging that he threatened Bilsky or attempted to injure him with a firearm, all in violation of I.C. §§ 18-901, 18-905.

*State v. Larson*, 344 P.3d 910, 912–13 (Idaho Ct. App. 2014).

A jury convicted Petitioner on both charges. The Idaho Court of Appeals affirmed Petitioner's convictions, and the Idaho Supreme Court denied review. *State's Lodging B-8; B-14; B-15.*

## DISCUSSION OF CLAIM 7

1. **Habeas Corpus Standard of Law**

A federal court may grant habeas corpus relief when it determines that the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). If the state court has adjudicated a claim on the merits, habeas relief is further limited by § 2254(d), as amended by the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under AEDPA, federal habeas relief may be granted only where the state court's adjudication of the petitioner's claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

However, in this case, the Idaho Court of Appeals did not address the merits of Petitioner's prosecutorial misconduct claim, which he properly presented in his appellate briefing. *See State's Lodging B-1* at 11–17; *B-3* at 3–5. Instead, the appellate court appears to have addressed Claim 7 only as a state law claim that the prosecutor's statement of law was incorrect, not that the prosecutor violated due process by committing misconduct. The

court concluded that, although the prosecutor inaccurately described the law during closing argument—and, therefore, the trial court erred by overruling Petitioner's objections—the error was harmless. *State's Lodging B-8* at 6–13.

Because Petitioner properly presented Claim 7 but the Idaho Court of Appeals did not adjudicate it, this Court must review the claim de novo—meaning without deferring to the state court's legal conclusions. *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002). When considering a habeas claim de novo, a district court may, as in the pre-AEDPA era, draw from both United States Supreme Court and well as circuit precedent, limited only by the non-retroactivity rule of *Teague v. Lane*, 489 U.S. 288 (1989). Even under de novo review, however, the federal court still must apply the presumption of correctness found in 28 U.S.C. § 2254(e)(1) to any facts found by the state courts. *Pirtle*, 313 F.3d at 1167. That presumption can be rebutted, but the petitioner must do so by clear and convincing evidence.

If a petitioner succeeds in demonstrating a constitutional error in his conviction, he still is not entitled to federal habeas relief unless he "can establish that [the error] resulted in 'actual prejudice.'" *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). Under the *Brecht* standard, an error is not harmless, and habeas relief must be granted, only if the federal court has "grave doubt about whether a trial error of federal law had substantial and injurious effect or influence in determining the jury's verdict." *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995) (internal quotation marks omitted).

2. **Petitioner Is Not Entitled to Habeas Relief on Claim 7**

In Claim 7, Petitioner asserts that the prosecutor committed misconduct by

misstating the law in closing argument as to the intent required to convict a defendant of aggravated assault. *Dkt. 15* at 12–12A (ECF pp. 16–17).

For the following reasons, the Court concludes, on de novo review, that the prosecutor did not commit misconduct during closing argument.

    *A.*    ***Prosecutorial Misconduct Standard of Law***

The Due Process Clause of the Fourteenth Amendment guarantees the right to a fair trial, and prosecutors have a "duty to refrain from improper methods calculated to produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88 (1935). However, such methods will warrant habeas relief only if they "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 180 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

A court must consider the record as a whole when considering claims of prosecutorial misconduct, because even a prosecutor's inappropriate or erroneous comments or conduct may not be sufficient to undermine the fairness of the proceedings when viewed in context. *See United States v. Young*, 470 U.S. 1, 16–17 (1985); *Darden*, 477 U.S. at 182 (applying *Young*); *see also Donnelly*, 416 U.S. at 647–48 (distinguishing between "ordinary trial error of a prosecutor" and the type of "egregious misconduct … [that] amount[s] to the denial of constitutional due process"). The "touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982).

A prosecutor "should not use arguments calculated to inflame the passions or prejudices of the jury." *Darden*, 477 U.S. at 192 (internal quotation marks omitted).

However, a prosecutor's closing argument, "billed in advance to the jury as a matter of opinion not of evidence," is "seldom carefully constructed" and may contain "[i]solated passages" that are "less than crystal clear." *Donnelly*, 416 U.S. at 646-47. A court must not "lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations." *Id*. at 647. Therefore, a prosecutor's argument "must be examined within the context of the trial to determine whether the prosecutor's behavior amounted to prejudicial error. In other words, the Court must consider the probable effect the prosecutor's [improper argument] would have on the jury's ability to judge the evidence fairly." *Young*, 470 U.S. at 12.

Additionally, "[a] prosecutor should not misstate the law in closing argument." *United States v. Berry*, 627 F.2d 193, 200 (9th Cir. 1980). Among the factors to be considered when determining whether a misstatement of the law is egregious enough to constitute a due process violation are (1) whether the misstatement was inadvertent or purposeful, (2) whether the misstatement was isolated or pervasive, and (3) with respect to a misstated element of the offense, whether the evidence of that element was overwhelming. *Deck v. Jenkins*, 814 F.3d 954, 981 (9th Cir. 2016); *see also Allen v. Woodford*, 395 F.3d 979, 998 (9th Cir. 2005) (holding that improper comments by prosecutor did not deprive defendant of a fair trial, "given the trial court's instruction that statements by counsel were not evidence, and given the weight of the evidence against [the defendant]".).

Further, a prosecutor's misstatements of the law "are subject to objection and to

correction" by the trial court. *Deck*, 814 F.3d at 981 (quoting *Boyde v. California*, 494 U.S. 370, 384 (1990). Because a jury "is presumed to follow the trial court's instructions," a "slight misstatement of law by a prosecutor can be rendered harmless by the court's proper instruction to the jury." *Id*. at 979 (internal quotation marks omitted). However, jury instructions cannot "neutralize[]" the incorrect statement if the instructions "do not in any way address 'the specific statements of the prosecutor." *Id*. at 982 (quoting *United States v. Weatherspoon*, 410 F.3d 1142, 1151 (9th Cir. 2005)).

### B. *Factual Basis of Claim 7*

In Idaho, assault can be committed in one of two ways:

> (a) An unlawful attempt, coupled with apparent ability, to commit a violent injury on the person of another; or
>
> (b) An intentional, unlawful threat by word or act to do violence to the person of another, coupled with an apparent ability to do so, and doing some act which creates a well-founded fear in such other person that such violence is imminent.

Idaho Code § 18-901. Petitioner was charged under subsection (b), the "threat" form of assault, with respect to Adams. He was charged under both subsections, the "threat" and "attempt" forms of assault, with respect to Bilsky. *Larson*, 344 P.3d at 911–12.

The intent element with respect to the threat form of assault requires the prosecution to prove that the defendant had the "intent to make a threat." *State v. Pole*, 79 P.3d 729, 732 (Idaho Ct. App. 2003). That is, assault by threat requires an actual intent to threaten. The mere intent to point a gun at someone is insufficient.

The attempt form of assault also requires a specific intent. When a person is charged

with the attempt to commit a crime, the prosecution "bears the burden of proving that the defendant *intended* to commit the crime." *State v. Pratt*, 873 P.2d 800, 812 (Idaho 1993). Therefore, "assault by attempt to commit a violent injury requires actual intent to injure." *Larson*, 344 P.3d at 916. Again, the intent to point a gun at someone is not sufficient.

In Petitioner's case, during closing argument the prosecutor misstated the intent element required for assault:

> [Prosecutor]: Preliminarily, I do want to draw your attention to Jury Instruction 13 as it is not a model of clarity. It states: "In every crime or public offense there must exist a union or joint operation of act and intent." I submit that the word "intent" in this context does not mean the intent to commit a crime.
>
> [Defense Counsel]: Objection, your Honor.
>
> …
>
> … The—it's not up to the prosecution to explain the jury instructions. He can argue what they mean but he cannot explain or elucidate.
>
> [Trial Court]: He can argue his. Go ahead ….
>
> …
>
> [Prosecutor]: What that jury instruction speaks to you is you don't have to have the intent to commit the crime itself; you have the intent to commit the interdicted act. That is, *you don't have to have the intent to commit the crime of aggravated assault; you have to have the intent to point and point the weapon*, use—
>
> [Defense Counsel]: Objection again.

| | |
|---|---|
| [Prosecutor] | —so *in an assaultive manner*— |
| [Defense Counsel]: | He is explaining and definite what that means, sir. |
| [Trial Court]: | I'm going to allow this as argument. |
| … | |
| [Prosecutor]: | So unlike a DUI, to put it in context, you don't have to have the intent to drive while under the influence of alcohol; you simply have to have the intent to drive the automobile. That's what that instruction means. |

*State's Lodging A-2* at 795–97 (emphasis added).

The prosecutor essentially argued that, to convict Petitioner of assault—either by threat or by attempt—the state had to prove only that Petitioner intended to point the gun at Adams and Bilsky—not that he intended to threaten either of them or intended to commit a violent injury against Bilsky. The Idaho Court of Appeals recognized in Petitioner's direct appeal that the prosecutor's argument was incorrect.[2] Instead, the state bore the burden of proving that Petitioner intended to threaten Adams and that he either intended to threaten or intended to injure Bilsky.

### C. The Prosecutor's Misstatements of the Intent Requirement Did Not Deprive Petitioner of Due Process of Law

On de novo review, the Court cannot conclude that the prosecutor's misstatements of the law constituted misconduct in violation of the Due Process Clause.

---

[2] Even though the Court is reviewing the decision of the Idaho Court of Appeals de novo, that court's interpretation of Idaho state law is binding on this Court. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (per curiam) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.").

As for the first factor identified in *Deck*, the Court concludes that the prosecutor's misstatements of the intent element were inadvertent. Although the prosecutor certainly intended to inform the jury of his belief as to what the law required, there is no evidence that the prosecutor purposefully *misstated* the law. It is equally likely that the prosecutor simply believed, incorrectly, that the law required only a general, rather than a specific, intent. Thus, the misstatements did not constitute a purposeful attempt to mislead the jury as to the intent requirements. *See Deck*, 814 F.3d at 981.

The second *Deck* factor, the frequency of the misstatements. does not weigh heavily in either direction. The prosecutor's misstatements of the law were not isolated, given that the prosecutor made several objectionable statements in the course of explaining the intent element. However, neither were those misstatements pervasive within the context of the prosecutor's entire closing argument, which, including rebuttal, covers nearly 13 pages of the transcript.

The third *Deck* factor is the strength of the evidence that Petitioner had the requisite intent to threaten Adams and the intent to threaten or to injure Bilsky. The Court concludes the evidence of that intent is overwhelming.

Petitioner's story was drastically different from that told by Adams and Bilsky at trial. By rejecting Petitioner's claim of self-defense and finding him guilty, the jury necessarily credited the testimony of Adams and Bilsky and rejected that of Petitioner.

Adams testified that Petitioner shoved a gun in her face and told her he would kill her. The only reasonable interpretation of those acts is that Petitioner intended to threaten Adams. And Bilsky testified that Petitioner threatened to kill Bilsky, pointed a gun at him,

and fired towards him. Once again, the only reasonable interpretation of that act is that Petitioner intended to threaten or to injure Bilsky. Therefore, the evidence accepted by the jury overwhelmingly shows that Petitioner acted with the intent required for conviction on both assault charges.

Finally, the trial court instructed the jury that "arguments and statements by [the] lawyers are not evidence." *State's Lodging A-2* at 783. Thus, the jury was aware that, in a conflict between an instruction and a closing argument, the jurors must rely on the instruction. *See Allen*, 395 F.3d at 998.

The jury instructions also accurately quoted the assault statute:

> An assault is committed when a person, one, unlawfully *attempts with apparent ability to commit a violent injury* on the person of another or, two, *intentionally and unlawfully threatens* by word or act to do violence to the person of another with apparent ability to do so and does some act which creates a well-founded fear in the other person that such violence is imminent.

*State's Lodging A-2* at 784 (emphasis added). These instructions plainly communicated to the jury that Petitioner could not be found guilty of the assault on Adams unless he intentionally threatened her, and that he could not be found guilty of the assault on Bilsky unless he intentionally threatened or attempted to injure Bilsky.

Because the Court presumes that the jury followed these instructions, the trial court's instructions to the jury cured the prosecutor's mistaken explanation of the intent element. *See Deck*, 814 F.3d at 979. Therefore, Petitioner has not shown that the prosecutor's misstatements of law rose to the level of a due process violation, and he is not entitled to relief of Claim 7.

# ORDER

**IT IS ORDERED:**

1. Petitioner's Motion for Evidentiary Hearing (Dkt. 35) is DENIED.

2. Claim 7 of the Second Amended Petition is DENIED on the merits.[3] Because all of Petitioner's other claims have already been dismissed, this entire action is DISMISSED with prejudice.

3. The Court does not find its resolution of this habeas matter to be reasonably debatable, and a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c); Habeas Rule 11. If Petitioner wishes to appeal, he must file a timely notice of appeal with the Clerk of Court. Petitioner may seek a certificate of appealability from the Ninth Circuit by filing a request in that court.

DATED: January 28, 2020

_____
David C. Nye
Chief U.S. District Court Judge

---

[3] Alternatively, Claim 7 is dismissed for failure to comply with a Court order. *See* Fed. R. Civ. P. 41(b); Habeas Rule 12.